1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

11
12
13
14

15   THOMAS J. BOEHM,                    )  ED CV 05-808 SH
                                         )
16              Plaintiff,               )  MEMORANDUM DECISION
                                         )
17              v.                       )
                                         )
18   MICHAEL ASTRUE,                     )
     Commissioner of Social Security,    )
19                                       )
                Defendant.               )
20                                       )
                                         )
21   _____)

                      I. PROCEEDINGS
22
23          Plaintiff filed a Complaint on June 31, 2005, seeking review of the decision

24   by the Commissioner of the Social Security Administration denying Disability

     Insurance Benefits and Supplemental Security Income benefits for lack of
25
     disability. On September 15, 2005, both parties consented to proceed before United
26
     States Magistrate Judge Stephen J. Hillman, after which defendant filed an answer
27
     on December 29, 2005. The parties thereafter filed a joint stipulation on August 1,
28
     2006. The matter has been taken under submission.

## II. BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits on July 26, 1999 alleging an inability to work. AR 83. The application was denied by the State Disability Determination Service, and a request for a hearing was timely filed. AR 62. On October 25, 2000, plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 27.

Following the hearing, plaintiff's claim was denied again. AR 12. The ALJ concluded that the plaintiff was not disabled at any time through March 5, 2001, and that his residual functional capacity, absent drug abuse, allows him to complete work which exists in significant numbers in the national economy. AR 21. The ALJ also concluded that the plaintiff's allegations regarding his limitations were not totally credible based on a number of factors, discussed below. AR 20.

Following the ALJ's determination, the plaintiff filed a Complaint, which challenged the ALJ's determination and the case was remanded on July 18, 2003. AR 435. New hearings were held on September 28, 2004 and February 24, 2005 and the ALJ issued an unfavorable decision on June 7, 2005. AR 395, 412, 384. Plaintiff again filed a Complaint, challenging the ALJ's determination, which alleges that the ALJ erred (1) by failing to comply with the Court Order requiring him to request medical source statements from the treating sources; (2) by improperly considering the opinion of disability submitted by the treating physician; and (3) by improperly considering the opinion of the consultative psychological examiner.

For the reasons discussed below, the Court finds that none of plaintiff's claims of error have merit.

## III. DISCUSSION

Issue 1:

The first issue raised is whether or not the Administrative Law Judge (ALJ) complied with the Court Order requiring him to request medical source statements from the treating sources. Plaintiff argues that the stipulated order was clear in its language, and that the ALJ was required to update all medical source statements, which he failed to do. The actual syntax of the stipulated remand order, paragraph six, reads as follows, "The ALJ shall further be directed to update the evidence from all treating sources, and request medical source statements on the claimant's ability to work." AR 439.

What plaintiff fails to point out is that paragraph four of the stipulated remand order also speaks to the ALJ's responsibility to update medical information on remand. Paragraph four reads, "If additional evidence and/or clarification from treating, examining or other sources is required, the ALJ shall seek clarification from such sources, pursuant to 20 C.F.R. §§ 404.1512 (e) and 416.912 (e) (2003); for example, the ALJ should seek clarification of the opinions set forth in Exhibits 1F, 6F, and 14F respecting the claimant's ability to perform sustained work activity[.]" AR 439.

Moreover, as defendant points out, the Appeals Council's remand order elaborated on the responsibility of the ALJ on remand, stating that the ALJ will "obtain additional evidence concerning the [plaintiff's] impairments in order to complete the administrative record [. . .] The additional evidence may include, if warranted and available, a consultative mental status examination and medical source statements about what the claimant can still do despite the impairment." AR 445. Additionally, in another paragraph the Appeals Council directs that the ALJ "may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements [.]" AR 445. The plain language of the Appeals Council's directions on remand make the obtaining of this medical information required only insofar as the ALJ believes it is

1   necessary to complete the Administrative Record. As plaintiff points out, the Ninth

2   Circuit has held that "the ALJ is bound to follow the Appeals Council's order 'and

3   may not take any additional action that is not consistent with the Appeals Council's

4   remand order.'" Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998), citing

5   20 C.F.R. §§ 404.983 and 404.977.

6        The question then becomes, did the Appeals Council erroneously instruct the

7   ALJ by not communicating the mandatory nature of paragraph six of the stipulated

8   remand order? No case law has been cited regarding the Appeals Council's

9   phrasing of a remand order, and as such this is an issue of first impression for this

10  Court. This Court finds that the Appeals Council's directions to the ALJ on remand

11  were reasonable in the present case because they comport with the spirit of the

12  C.F.R.. According to both the C.F.R. and a myriad of case law, in Social Security

13  cases, the ALJ has a duty to develop the record fully and fairly, to ensure that the

14  claimant's interests are considered. See e.g., Mayes v. Massanari, 276 F.3d 453,

15  459 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

16  2001)); 20 C.F.R. §§ 404.1512-1513 and 416.912-913. However, this duty is only

17  triggered where the evidence is inadequate to allow for proper evaluation. Id.

18  Logically then, it only makes sense to require the ALJ to update the medical

19  information necessary to make an informed decision on the claimant's disability

20  status, any requirement beyond this would exceed the responsibility imposed by

21  the C.F.R. and be a waste of judicial resources. It is the finding of this Court that

22  the ALJ satisfactorily complied with the direction of the Appeals Council in

23  reaching his decision by convening two hearings, hearing testimony from two

24  medical experts, ordering two consultative examinations, and admitting treating

25  source evidence submitted by plaintiff's counsel to the record. AR 395-442, 465-

26  73.

27       Furthermore, the defendant was given several opportunities to object to the

28  phrasing of the Appeals Council's directions on remand but failed to do so. As the

1  defendant notes in the joint stipulation, "plaintiff did not contest or question the

2  Appeals Council's instructions to the ALJ at or prior to the hearings convened by

3  the ALJ. (AR 397, 414)." To now contend that this case warrants remand, after

4  abstaining from objecting to either the phrasing of the Appeals Council's directions

5  on remand or the arguable ambiguity between paragraphs four and six of the

6  stipulated remand order, seems rather dubious. Along those same lines, the plaintiff

7  also failed to submit medical source statements from Plaintiff's mental health

8  treating sources, and did not ask the ALJ to obtain such statements from any

9  mental health treating sources. AR 410, 433, 509-66. Presumably, if the plaintiff

10  was concerned that the Appeals Council's lack of mandatory language would

11  somehow omit important evidence from mental health treating sources, he would

12  have submitted that evidence himself. To just sit idly by and then complain post

13  facto that the ALJ's failure to request these statements warrants remand, again,

14  seems disingenuous.

15        Finally, assuming, arguendo, that it was error for the ALJ to fail to request

16  medical source statements from the plaintiff's treating sources, this Court finds that

17  it was harmless error. Since the ALJ had an abundance of evidence on which to

18  base his conclusion that the plaintiff was malingering, the ALJ was free to discount

19  the opinions of doctors who made their diagnoses based upon false information.

20  AR 407; See Saelee v. Chater, 84 F.3d 520, 522 (9th Cir. 1996). Specifically, the

21  plaintiff continuously lied about his drug use: he admitted to abusing cocaine and

22  marijuana for many years, testified that he had either never used street drugs or had

23  not in many years, and made representations to his doctors that he had not used

24  drugs for a varying amount of time. AR 400-403, 419-420, 227, 247, 285, 291,

25  309, 516, 545, 555. Additionally, several doctors have concluded that the

26  plaintiff's test results are inconsistent with his personal history, indicating, in the

27  opinion of Dr. Taylor, that the plaintiff was "faking-bad." AR 406, 421, 572.As a

28  result, as the medical expert Dr. Rath testified, since plaintiff misled his treating

1    sources about his drug use, the doctors were unable to accurately diagnose him.

2    AR 423-424. This opinion was supported by Drs. Taylor and Malanchuaruvil, as

3    well. AR 407, 572. As such, any information that could be gleaned from these

4    medical sources would undoubtedly be tainted by the same malingering which has

5    undermined the opinions of the treating physicians whose diagnoses are on the

6    record. Moreover, this is especially relevant in this case, where the ALJ reached

7    the unchallenged conclusion that the plaintiff's disability is substantially caused by

8    his drug use. Since a claimant cannot collect DIB or SSI benefits for disability

9    caused by drug or alcohol abuse, the extent of his drug use is clearly material to the

10   claimant's ability to collect benefits. For the foregoing reasons, the Court rejects

11   the plaintiff's first claim of error.

12

13   Issue 2:

14        The second issue raised is whether or not the ALJ properly considered the

15   opinion of disability submitted by the alleged treating psychiatrist. Plaintiff argues

16   that because the ALJ failed to discuss Dr. Soor-Melka's Psychiatric Evaluation the

17   case should be remanded.

18        In her evaluation, Dr. Soor-Melka found that the plaintiff had bipolar

19   disorder, auditory and visual hallucinations, and a Global Assessment of

20   Functioning (GAF) Score of 40,– which plaintiff notes is indicative of impairment.

21   Plaintiff also notes that Dr. Soor-Melka did not diagnose a substance related

22   disorder. AR 517. Plaintiff's claim of error essentially alleges that the ALJ failed to

23   consider this information and readily used other evidence, such as a GAF score of

24   85, and drew contrary conclusions, such as the conclusion that drug abuse was a

25   contributing factor to plaintiff's disability, without reconciling Dr. Soor-Melka's

26   evaluation. AR 391.

27        As a "general rule" more weight should be afforded to the opinion of a

28   treating physician than to doctors who do not treat the claimant. Lester v. Chater,

1   F.3d 821, 830 (9th Cir. 1996). This is because the treating physician is employed to

2   cure the claimant, and has a greater chance to observe and know the claimant over

3   time. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

4          However, in the present case, this Court finds that it was not error for the

5   ALJ to have omitted Dr. Soor-Melka's evaluation from his decision. In the first

6   place, it is unclear how the plaintiff reaches the conclusion that Dr. Soor-Melka

7   was a treating physician. As stated in Sprague, the treating physician's opinion is

8   given greater weight because the treating physician has seen the claimant over

9   time, and would thereby be in a position to diagnose the claimant better than would

10  a one-time examining physician. The plaintiff, however, cites only one evaluation

11  by Dr. Soor-Melka. AR 517. As a result, Dr. Soor-Melka's conclusions are

12  arguably entitled to no deference since she was merely a one-time examining

13  physician.

14         Next, the ALJ concluded that the plaintiff had bipolar disorder and substance

15  abuse, and that the combination of those impairments met the criteria for the

16  presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P,

17  Appendix 1. AR 420. Thus, to object that Dr. Soor-Melka's evaluation was

18  ignored, when the ALJ determined that the plaintiff had bipolar disorder and was

19  presumptively disabled seems to be pointless. Granted, the ALJ does not

20  specifically determine that the plaintiff has visual or auditory hallucinations (See

21  finding of harmlessness below), nor does he mention the GAF score of 40.

22         As to the GAF score, the handwriting in Dr. Soor-Melka's report beside the

23  words "Current GAF=," borders on completely illegible. The Court finds

24  defendant's interpretation of "fair" to be as plausible as plaintiff's interpretation of

25  "forty." The only certainty here is that whatever the word is it cannot be interpreted

26  with certainty what it is. Assuming for the moment that it does read "forty," the

27  ALJ was still under no obligation to take it into consideration. As defendant points

28  out, GAF scores are not typically relied upon to assess residual functional capacity,

1   and failing to do so is not error. <u>See</u> <u>Alavarez v. Barnhart</u>, 2002 WL 31466411

2   (W.D. Tex. 2002); <u>Howard v. Commissioner</u>, 276 F.3d 235, 241 (6th Cir. 2002).

3   Additionally, assuming again the score does indeed read "forty," this Court finds

4   that the GAF score of 85, while mentioned briefly, was not relied upon by the ALJ

5   in reaching his conclusion that the plaintiff's disability is substantially influenced

6   by his substance abuse, and therefore it was not error to selectively mention one

7   score and not the other.

8        Assuming, <u>arguendo</u>, that it was error on behalf of the ALJ to omit Dr. Soor-

9   Melka's report from the decision, and that she qualifies to be considered a "treating

10  physician", this Court holds that it was harmless error. Considering that Dr. Soor-

11  Melka's report contains a line which reads "Substance abuse: In college used

12  cocaine and marijuana," her report is undermined by the same malingering that

13  undermined all of the other treating physicians, discussed above. As a result, her

14  conclusions are also inherently flawed, because she was not aware of the plaintiff's

15  ongoing substance abuse problem. This also explains the ALJ's omission of Dr.

16  Soor-Melka's diagnosis of visual and auditory hallucinations and her failure to

17  diagnose a substance abuse related disorder. Thus, the finding of malingering

18  constitutes a "specific and legitimate" reason to discount the opinion of Dr. Soor-

19  Melka. Since the ALJ implicitly considered this evidence by rejecting any

20  conclusions where physicians were misled about the plaintiff's substance abuse,

21  the second claim of error also lacks merit. AR 393.

22

23  <u>Issue 3</u>:

24       The final issue raised is whether or not the ALJ properly considered the

25  opinion of the consultative psychological examiner. Plaintiff argues that because

26  the ALJ ignored the opinion of Dr. Taylor and his GAF score and never actually

27  reached a conclusion about whether to accept or reject them, the case should be

28  remanded.

Contrary to plaintiff's contentions, Dr. Taylor only reported scattered test results, and never reached any conclusions regarding plaintiff's disability. Rather, it was Dr. Rath who reviewed the records and rendered an opinion. AR 420-27. Despite Dr. Taylor never actually reaching an opinion, the record is replete with his impressions that the plaintiff was continually lying to him and not giving adequate effort throughout the testing. While plaintiff argues that the ALJ has not expressed an opinion on Dr. Taylor's report, by citing all of the instances where Dr. Taylor expressed his impressions of the plaintiff's penchant for malingering, the ALJ was clearly rejecting the test results. AR 390. Indeed it would be nonsensical for the ALJ to explain how Dr. Taylor believed the plaintiff was lying and faking his disability, and then to accept his test results.

Finally, the plaintiff argues that the ALJ should have considered Dr. Taylor's GAF score. Setting aside for a moment the abundant evidence of malingering that the plaintiff had shown during testing with Dr. Taylor, for the reasons set forth above, the GAF score is not required, and failure to consider it is not error. Therefore, plaintiff's third and final claim of error lacks merit.


IV. ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed and plaintiff's Complaint is dismissed.


Date: July 24, 2007


_____/s/_____

STEPHEN J. HILLMAN

UNITED STATES MAGISTRATE JUDGE